PRICE, Judge.
Harvill Real Estate brought this suit against William C. Foster to recover a real estate commission. The issue presented is whether an agreement terminating the listing contract relieved Foster of paying a commission on a sale made by him to a party procured by plaintiffs prior to the termination.
The trial court found the termination agreement did not have the effect of releasing the right to a potential commission under the extension provisions [1] of the listing *401 contract for efforts previously made by plaintiffs to sell the property. Judgment was accordingly rendered for plaintiffs for the commission earned of $3,288.20. We affirm the judgment.
Foster listed his home with the Harvill firm in October, 1975, under the standard exclusive real estate listing contract.
Harvill found a purchaser for the home, Mr. and Mrs. Hugh Ragon, who signed a written contract to purchase on October 28, 1975, for $61,700. A closing date was set for November 7th, but the purchasers did not appear, apparently due to the hospitalization of Mr. Ragon. Several telephone calls were made by plaintiffs to Mr. Ragon in an attempt to determine when the transaction could be closed. Foster was anxious to move his family to Kentucky and made frequent inquiries to plaintiffs as to when the sale would be completed. Apparently the Ragons became irritated at agents of the Harvill firm because of their persistence on closing the transaction, and gave plaintiffs written notice on November 13, 1975, that they no longer intended to purchase the home. A demand was made for the return of a $500 deposit made with Harvill.
On November 16th, Foster met with Lee and Kenneth Harvill to request the cancellation of the listing contract. Lee Harvill believed that Foster intended to sell the house to his mother and proposed a release for that purpose. Foster declined to accept Harvill’s release and produced another release dictated by his attorney. Lee Harvill signed the release which stated:
We hereby do terminate contract with William C. Foster and release him from all obligations to Harvill Real Estate on this 16th day of November, 1975.
On the following day, defendant signed a deed conveying the property to the Ragons for $57,500. This is approximately six per cent less than the original purchase price which is coincidental with the amount of the commission claimed by plaintiffs.
There is no doubt that in the absence of the purported release, plaintiffs would be entitled to their commission as their efforts were clearly the procuring cause of the Ragons purchasing the property.
The language employed in terminating the listing contract is subject to more than one interpretation. Foster contends it was intended to be an absolute abrogation of any rights and obligations between him and plaintiffs. Harvill contends the purpose of the release was to terminate their right to continue efforts to sell the property.
Harvill’s construction is the more reasonable under the circumstances presented and is in substantial accord with the evidence.
It would be difficult to understand plaintiffs’ agreeing to forfeit all rights to potential commissions earned under the extension provisions of the contract just to keep the goodwill of defendant.
The trial judge’s resolution of the conflicting testimony as to the purpose of the release is supported by the evidence and should be sustained.
The judgment is affirmed at appellant’s costs.

. * * * Owner agrees to pay Agent 6 percent of the selling price, as his compensation, if said property is sold or exchanged: (1) During the life of this agreement, whether negotiated by Agent, Owner or any third party; or (2) Within six (6) months after termination to a vendee, or exchange recipient to whom said property was shown or submitted by anyone, (or with whom negotiations involving said property had been carried on) prior to termination hereof, if Owner has had actual knowledge of such showing, submission or negotiations or *401 the identity of persons to whom said property has been shown or submitted (or with whom negotiations have been carried on) has been revealed to Owner in writing by Agent (or any sub-agent) within five (5) days after any termination hereof.